# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID DUVAL, on behalf of himself and on behalf of all others similarly situated, ) ) ) Plaintiffs ) ) v. ) ) FEDEX GROUND PACKAGE SYSTEM, INC., ) and FEDEX GROUND PACKAGE SYSTEM, ) INC. d/b/a FEDEX HOME DELIVERY ) Defendants ) ) | JURY DEMANDED<br><br>Civil Action No. |

## CLASS ACTION COMPLAINT

### INTRODUCTION

1. This is an action brought by current and former delivery drivers of FedEx Ground Package System, Inc. and its division, FedEx Home Delivery (collectively "Defendant" or "FedEx Ground" or "FXG") for Defendant's unlawful misclassification of drivers as independent contractors instead of employees. The Plaintiffs named in this complaint bring this action on behalf of a class of similarly situated persons who have worked as delivery drivers for FedEx Ground in the state of Massachusetts for Defendant's statutory and common law violations that stem from this misclassification.

### PARTIES

2. Plaintiff David Duval is currently an adult resident of Acushnet, Massachusetts. Plaintiff Duval has worked as a FedEx Home Delivery driver since approximately February of 2000.

3. Plaintiff Steven Hayes is currently an adult resident of Natick, Massachusetts. Plaintiff Hayes has worked as a FedEx Home Delivery driver since approximately June of 2004.

4. Plaintiff Raimundo Tavares is currently an adult resident of Brockton, Massachusetts. Plaintiff Tavares worked as a Home Delivery driver from approximately November of 2007 to March of 2009.

5. Plaintiff Kimberly White is currently an adult resident of Clermont, Florida. Plaintiff White worked as a Home Delivery and Ground driver from approximately November of 2007 to January of 2009.

6. Plaintiff Orlando Deras is currently an adult resident of Malden, Massachusetts. Plaintiff Deras worked as a FedEx Home Delivery driver from approximately November of 2002 until March of 2004.

7. Plaintiff Craig Drenga is currently an adult resident of Blandford, Massachusetts. Plaintiff Denga worked as a FedEx Ground driver from approximately June of 1998 until September of 2004.

8. Plaintiff Triste Ervin is currently an adult resident of Rutland, Massachusetts. Plaintiff Ervin has worked as a FedEx Home Delivery driver since approximately November of 2005 to May of 2009.

9. Plaintiff Michael Ferguson is currently an adult resident of Quincy, Massachusetts. Plaintiff Ferguson worked as a FedEx Ground driver from approximately June of 2003 to November of 2009.

10. Plaintiff Guy Gray is currently an adult resident of Hudson, New Hampshire. Plaintiff Gray worked as a FedEx Ground driver from approximately January of 1991 to January of 2005.

11. Plaintiff Patrick Maleus is currently an adult resident of Portsmouth, New Hampshire. Plaintiff Maleus worked as a FedEx Home Delivery driver from approximately April of 2004 to September of 2004.

12. Plaintiff Phillip Nekrash is currently an adult resident of Jacksonville, Florida. Plaintiff Nekrash worked as a FedEx Home Delivery driver from approximately May of 2004 to August of 2004.

13. Plaintiff Edward Prestas, Jr. is currently an adult resident of Putnam, Connecticut. Plaintiff Prestas worked as a FedEx Home Delivery driver from approximately November of 2005 to February of 2008.

14. Plaintiff Edward Shore is currently an adult resident of Mansfield, Massachusetts. Plaintiff Shore worked as a FedEx Ground driver from approximately January of 1992 to July of 2004.

15. Plaintiff Sehoon Oh is currently an adult resident of Beverly, Massachusetts. Plaintiff Oh worked as a FedEx Home Delivery driver from approximately March of 2005 to July of 2006.

16. Plaintiff Joyce Ducharme is currently an adult resident of Swansea, Massachusetts. Plaintiff Ducharme worked as a FedEx Home Delivery driver from approximately August 2003 until November 2003.

17. Plaintiff Jose Aguilar is currently an adult resident of Lynn, Massachusetts. Plaintiff Aguilar worked as a FedEx Home Delivery driver from approximately February 2003 until November 2005.

18. Plaintiff Rudy Amorojo is currently an adult resident of Auburn, Massachusetts. He has worked for FedEx since approximately August of 2006.

19. Plaintiff Paul Beatty is currently an adult resident of Halifax, Massachusetts. Plaintiff Aguilar worked as a FedEx Ground driver from approximately January 1994 until May 2004.

20. Plaintiff Paul Beudreau is currently an adult resident of Worcester, Massachusetts. He has worked as a FedEx Ground Driver since approximately October of 2000.

21. Plaintiff Martin Bernier is currently an adult resident of East Taunton, Massachusetts. He worked as a driver for FedEx from approximately December of 2008 to November of 2009.

22. Plaintiff Dennis Carvalho is currently an adult resident of Worcester, Massachusetts. He has worked as a driver for FedEx since approximately January of 2007.

23. Plaintiff Jo-Ann Cecilio is currently a resident of Gloucester, Massachusetts. She worked as a driver for FedEx from approximately August 2005 until February of 2009.

24. Plaintiff Diane Corriveau is currently a resident of Holland, Massachusetts. She worked as a driver for FedEx Home Delivery from approximately January of 2004 to January of 2008.

25. Plaintiff Elisa DeCosta is currently an adult resident of Plainville, Massachusetts. She has worked as a driver for FedEx since approximately March of 2010.

26. Plaintiff Mark Elisio is currently an adult resident of Taunton, Massachusetts. He worked as a driver for FedEx Ground from approximately May of 2002 until July 0f 2007.

27. Plaintiff Paul Gagnon is currently an adult resident of Billerica, Massachusetts. He worked as a driver for FedEx Ground from approximately June 2005 until June of 2008.

28. Plaintiff Gerald Hernandez is currently an adult resident of Roslindale, Massachusetts. He worked as a driver for FedEx Ground from approximately April of 2002 to January of 2008.

29. Plaintiff Carmen Lamarca is currently an adult resident of Billerica, Massachusetts. Plaintiff Lamarca has worked as a driver for FedEx since approximately February of 1992.

30. Plaintiff Rossandro Lucena is currently an adult resident of Worcester, Massachusetts. Plaintiff Lucena worked as a driver for FedEx Home Delivery from approximately October of 2005 until February of 2009.

31. Plaintiff Neil Robidoux is currently an adult resident of Worcester, Massachusetts. Plaintiff Robidoux has worked as a driver for FedEx since December of 2005.

32. Plaintiff Hudson Zeferino is currently an adult resident of Woburn, Massachusetts. Plaintiff Zeferino worked as a driver for FedEx Ground from approximately December of 2003 to January of 2009.

33. The above-named Plaintiffs bring this action on their own behalf and on behalf of a group of all others similarly situated. That group includes all individuals who worked within the state of Massachusetts for FedEx Ground Package System, Inc. and/or its division, FedEx Home Delivery, as pickup and delivery drivers and who were improperly classified by Defendant as independent contractors. The Class meets all of the requirements of Rule 23 of the Federal Rules of Civil Procedure.

34. Defendant FedEx Ground Package System, Inc., together with its division, FedEx Ground Package System, Inc. d/b/a FedEx Home Delivery, is a Delaware corporation with its

principal place of business in Pittsburgh, Pennsylvania. At all times relevant, FedEx Ground, an affiliate of FedEx Corporation, engaged in transportation and delivery services in Massachusetts.

## JURISDICTION AND VENUE

35. Jurisdiction is invoked in this Court pursuant to 28 U.S.C. § 1332(d)(2).

## STATEMENT OF FACTS

36. FedEx Ground, as an affiliate of FedEx Corporation, employs hundreds of drivers in Massachusetts to pick up and deliver packages to customers of Defendant.

37. As a condition of employment, each FedEx Ground driver is required to sign a lengthy form contract entitled the "Pick-up And Delivery Contractor Operating Agreement" that mischaracterizes each driver as an "independent contractor." These Operating Agreements (hereinafter referred to as the "Operating Agreement," the "Agreement" or "OA") were designed to conceal the true nature of the relationship between FedEx Ground and its drivers: that of employer and employee. The Operating Agreement between each member of the Plaintiff Class and Defendant is the same in all material respects. The Operating Agreement between Plaintiffs and FedEx Ground contains all of the same identical material terms with only a few, minor and insubstantial differences.

38. The Operating Agreement contains various statements purporting to Classify Plaintiffs and Plaintiff Class Members as independent contractors. At the same time, the Operating Agreement retains to the company, *inter alia*, the right to approve or disapprove any vehicle used to provide service, the right to approve or disapprove any driver or helper who provides service, the right to approve or disapprove the purchase or sale of any vehicle, the right to assign pick-up and delivery stops to each driver, the right to temporarily or permanently transfer portions of any route to another with or without compensation, the right to determine

when a driver has "too few" or "too many" packages to deliver on a given day, the right to inspect vehicles and drivers for compliance with company-promulgated appearance standards, the right to terminate the contract upon thirty days notice or whenever the company unilaterally determines that any provision of the contract has been "violated" amounting to the right to terminate at will, the right to require the use of communication equipment and the wearing of company uniforms, the right to take a vehicle out of service, the right to review and evaluate "customer service" and to set and change standards of such service, the right to require drivers to perform service at "times" requested by customers and determined by Defendant, the right to withhold pay for certain specified expenses, the right to require purchase of specified insurance and numerous other purchases by drivers, the right to require completion of specified paperwork, and other rights reserved to Defendant.

39. The Operating Agreement is and at all relevant times has been a contract of adhesion, drafted exclusively by Defendant and/or its legal counsel, with no negotiation with drivers, who are required to sign the Agreement as a condition of employment. Plaintiffs and Plaintiff Class Members are required to sign the form contract as is, without any changes made to the terms contained therein. Each year, drivers are required to sign additional Addenda which are likewise not subject to negotiation and are unilaterally drafted adhesion contract provisions. The Agreement is, and at all material times has been unlawful, unconscionable and fraudulent in form and effect.

40. Though the Agreement labels the drivers as independent contractors, the behavioral and financial control manifested over the drivers by Defendant demonstrates that the drivers are employees rather than independent contractors. Such control includes, but is not limited to, the following matters:

a. Defendant employs supervisors and managers who have supervisory responsibility over the drivers and assign and direct their work. These supervisors and managers work in the terminals where the drivers report to retrieve the packages that they deliver for Defendant's customers in furtherance of Defendant's business operations.

b. The drivers are required to comply with Defendant's instructions in terms of written and unwritten policies, procedures, and directives appearing in the Agreement and unilaterally promulgated by Defendant from time to time regarding the completion of the drivers' duties. Drivers suffer financial penalties and/or disciplinary actions for failure to comply with such policies, procedures, and directives.

c. Upon starting to work for Defendant, the drivers receive training in Defendant's policies and procedures, in the documentation Defendant requires of drivers, and in the technology Defendant mandates the drivers to use in the performance of their work for Defendant.

d. Though the drivers are required to purchase or lease the vehicles they use in working for Defendant and to purchase the uniforms they wear in performing said work, Defendant requires that the drivers adorn their vehicles and uniforms with Defendant's logo and effectively prohibit the drivers from using their vehicles or uniforms for other business while so adorned. Such requirement prevents the drivers from using their vehicles and uniforms to offer services to the general public.

e. In addition to paying the drivers for each package picked up and/or delivered, the Agreement provides that Defendant will pay the drivers a set amount for each day that the driver provides services to Defendant as well as a premium for the drivers' time when the drivers' route contains a small amount of package deliveries. Such payments are made to the drivers each week. Thus, their pay basis is not simply by the job, but by the time spent working.

f. Though the Agreement purports to give the drivers proprietary control over their routes, Defendant changes the drivers' routes from time to time without the drivers' permission and prohibit the drivers from selling their routes or having other individuals perform in their place without the express prior approval of Defendant.

g. Defendant exerts a high degree of control over the drivers' work. For example, they have begun installing GPS systems in the drivers' vehicles enabling Defendant to track the drivers' whereabouts at all times while working.

41. Though the Agreement labels the drivers as independent contractors, the type of relationship between Defendant and the drivers demonstrates that the drivers are employees rather than independent contractors. Factors showing an employment relationship include, but are not limited to, the following:

a. The work of the drivers in picking up and delivering packages for Defendant's customers is completely integrated into the business of Defendant such that Defendant's business depends significantly on the performance of the services that the drivers perform.

b. Though the drivers are required to purchase or lease the vehicles they use in working for Defendant, and to purchase the uniforms they wear in performing said work, Defendant requires that the drivers adorn their vehicles and uniforms with Defendant's logo and effectively prohibit the drivers from using their vehicles or uniforms for other business while so adorned. Such requirement prevents the drivers from using their vehicles and uniforms to offer services for other, similar businesses.

c. Though the Agreement purports to give the drivers proprietary control over their routes, Defendant exerts a high degree of control over the drivers' ability to sell their routes or have other individuals perform in their place. Such sales and substitutions require the express prior approval of Defendant, making the services of a type that must be rendered personally by drivers who have effectively been hired by Defendant.

d. Defendant prevents the drivers from choosing when and how much they care to work for Defendant, instead requiring the drivers to work a minimum number of hours and shifts and prohibiting the drivers from refusing work, such as picking up certain packages.

e. Many drivers have continued their relationship as drivers for Defendant exclusively over many years.

42. Defendant, per the Agreement, requires the drivers to pay Defendant's operating expenses, including but not limited to:

a. costs relating to the lease or purchase and operation of vehicles to perform work for Defendant and to maintain and repair such vehicles;

b. costs relating to the purchase of insurance, including vehicle insurance and work accident insurance;

c. costs relating to the purchase of uniforms adhering to Defendant's precise specifications;

d. costs of hiring temporary or replacement drivers when the drivers are unable to perform their work due to injury or illness or when the drivers take vacation or other time off; and

e. the share of federal employment taxes for which employers are liable; and

9

 f. other costs normally associated with the operation of a business and included in Defendant's business support package, such as maps, logos and signs, training, modems, and scanners.

43. Defendant also routinely takes other unlawful deductions from the drivers pay as well and/or does not pay the drivers for all work performed or amounts due to them, including not paying them for training time, withholding final pay and/or vacation pay.

44. By retaining behavioral and financial control over the drivers despite the express language to the contrary in the Agreement, Defendant has committed a widespread and systemic breach of the terms of said Agreement.

45. By retaining behavioral and financial control over the drivers despite the express language to the contrary in the Agreement, Defendant has misrepresented to the drivers that they are independent contractors (and thus entrepreneurs with the ability to independently manage and grow their businesses), when in fact they are employees (and thus entitled to a variety of legal benefits that inure from the employment relationship).

46. Defendant's right of control over Plaintiff Class Members is also retained and/or exercised by Defendant as demonstrated by concealed and/or undisclosed extra contractual sources such as Company written rules and policies described above and unwritten practices which supplement and fill gaps in the written contract.

47. Defendant has created and regularly updated a large number of written policies and procedures outside of the Operating Agreement that drivers are never given, but nonetheless are required to follow in their work. Defendant's written policies are contained in the FedEx Ground Manual, Operations Management Handbook, Settlement Manual and numerous other written and extra-contractual policies that are actively concealed from drivers and which Defendant fails to disclose and/or provide to drivers that govern the relationship between

Defendant and the drivers. The other written handbooks and manuals and additional extracontractual sources include, but are not limited, to written rules on "contractor" termination, directives and training provided to terminal managers, written rules on driver appearance (with illustrative poster), written and oral complaint procedures, memorandum and directives to terminal management and other rules concealed from and not provided to the drivers. When drivers do not follow a FedEx Ground rule, whether disclosed or undisclosed, known or unknown, they are subject to various types of punishment, some financial and some disciplinary, up to and including contract termination and/or non-renewal. Defendant documents such so called violations of such rules on forms referred to as "Business Discussion Notes" and retain these documents in secret driver files called "DOT" files, along with myriad other documents which are likewise concealed from and not disclosed to the drivers.

48.  Defendant does not contribute to workers' compensation and unemployment insurance programs and do not allow drivers to apply or qualify for workers' compensation or unemployment benefits.

49.  Despite Defendant's control over virtually all material aspects of the employment relationship, and despite the unequivocal command of applicable statutes and case law to the effect that workers such as Plaintiffs are entitled to the protections due employees under Massachusetts law, and despite the finding of the Los Angeles Superior Court in Estrada v. FedEx Ground, No. BC 210130 (Cal. Super. Ct.) that these drivers are employees, Defendant continues to misclassify its drivers as independent contractors. As a result, these drivers are deprived of the rights and protections guaranteed by Massachusetts law to employees, and they are deprived of employer-financed workers compensation coverage and unemployment insurance benefits. Furthermore, the terms and conditions of their employment contract require

these drivers to purchase, operate and maintain expensive trucks for Defendant's exclusive benefit and to work under other unlawful conditions. Defendant's mischaracterization of their drivers as independent contractors, the concealment and/or non-disclosure of the true nature of the relationship between Defendant and its drivers and the attendant deprivation of substantial rights and benefits of employment are part of an on-going unlawful and fraudulent business practice by Defendant which this court should enjoin.

### COUNT I
### (Declaratory Judgment pursuant to 28U.S.C. § 2201 and Mass. Gen. L. c. 231A)

50. Under the relevant laws of the United States and of Massachusetts, Defendant has misclassified the Plaintiffs and Class Members as independent contractors rather than as employees; therefore, pursuant to 28 U.S.C. § 2201 and Mass. Gen. L. c. 231A, this Court should issue a declaratory judgment establishing that the Plaintiffs and Class Members are or were employees of Defendant and that the Plaintiffs and Class Members are or were therefore entitled to all the rights and benefits of employment pursuant to the laws of the United States and of Massachusetts.

### COUNT II
### (Violation of Massachusetts Independent Contractor Law)

51. By misclassifying Plaintiffs and Class Members as independent contractors instead of employees, Defendant has violated Mass. Gen. Laws c. 149 § 148B. This claim is brought pursuant to Mass. Gen. Laws. c. 149 § 150.

### COUNT III
### (Violation of Massachusetts Wage Law)

52. By such conduct in forcing the Plaintiffs and Class Members to bear costs incident to Defendant's business operations, Defendant violated Mass. Gen. Laws. c. 149 §§ 148

and 150 by making unlawful deductions and unlawfully requiring Plaintiffs and Class Members to pay improper set-offs against their wages. Defendant also violated Mass. Gen. Laws. c. 149 §§ 148 and 150 and c. 151 § 1 for not paying Plaintiffs and Class Members for all time worked, and for withholding other wages owed, such as final paychecks and vacation pay.

## COUNT IV
### (Rescission of Operating Agreement)

53. Despite the express terms of the Operating Agreement, Plaintiffs' relationship with Defendant satisfies every aspect of the test for employment, and not for independent contractor status.

54. Defendant controls virtually every aspect of the Plaintiffs' work and earnings, as set forth in the general allegations above.

55. Despite this control and the actual status of the drivers as employees, Defendant mischaracterizes the Plaintiffs as independent contractors. As a result, these drivers must pay substantial sums of their own money for work-related expenses, including but not limited to the purchase or lease of vehicles meeting company specifications, and all costs of operating, insuring and maintaining those vehicles.

56. The Operating Agreement illegally and unfairly advantages Defendant, by mischaracterizing the status of the Plaintiffs in that Defendant evades employment related obligations, such as social security contributions, workers' compensation coverage, and state disability and unemployment compensation, illegally shifting the expense of workers' compensation coverage and other expenses to Plaintiffs.

57. The Operating Agreement between Defendant and each Plaintiff and member of the Class is void as against public policy and therefore unenforceable, as failing to recognize the

employment status of the Plaintiffs and the Class Members, and therefore denying them the legally cognizable benefits of employment.

58. The Operating Agreement between Defendant and each Plaintiff is an unconscionable contract of adhesion, which is unenforceable as contrary to the public interest, policy and law.

59. The Operating Agreement illegally shifts the burden of certain costs that an employer must pay.

60. While acting on the direct instruction of Defendant and discharging their duties for Defendant, Plaintiffs and the Class Members incurred expenses for, inter alia, the purchase or lease, maintenance, operating costs and adornment of vehicles; insurance; and uniforms. Plaintiffs and the Class Members incurred these substantial expenses as a direct result of performing their job duties.

61. By misclassifying its employees as "independent contractors," and further by contractually requiring those employees to pay Defendant's own expenses, Defendant has been unjustly enriched.

62. As a direct and proximate result of Defendant's conduct, Defendant has received substantial benefits to which it had no entitlement, at Plaintiffs and the Class Members' expense, including lost profits, self-employment taxes, premiums for insurance to replace workers compensation and disability benefits, business expenses, compensation of replacement workers, and other expenses.

63. Plaintiffs are entitled to compensation for all of the business expenses they were illegally required by Defendant to bear, for all of the employment taxes, unemployment

compensation and workers compensation the FEG should have but did not pay, and Plaintiffs are entitled to the quantum meruit value of their services as employees.

### COUNT V
### (Unjust Enrichment)

64. As a result of Defendant's conduct in misclassifying Plaintiffs and Class Members as independent contractors, Defendant has forced Plaintiffs and Class Members to bear the normal costs and incidents of Defendant's business and have thus unjustly enriched themselves to the detriment of Plaintiffs and Class Members in violation of the common law of Massachusetts.

### COUNT VI
### (Conversion)

65. By such conduct in forcing the Plaintiffs and Class Members to bear costs incident to Defendant's business operations, Defendant also converted the property of the Plaintiffs and Class Members to Defendant's own use in violation of the common law of Massachusetts.

### COUNT VII
### (Quantum Meruit)

66. Plaintiffs and Class Members have been deprived by Defendant of the fair value of their services and are thus entitled to recovery in *quantum meruit* pursuant to the common law of Massachusetts.

### COUNT VIII
### (Overtime Violations)

67. Plaintiffs hereby incorporate by reference paragraphs 1 through 155 above as if fully set forth herein, and, for a cause of action by the identified subclass of the plaintiff class, allege as follows:

68. The Plaintiffs and various class members operate vehicles with a gross vehicle weight rating of less than 10,001 pounds, including but not limited to P350, P400 and other small step package vans. Persons who operate such vehicles are not subject to the maximum hours regulations promulgated pursuant to the Federal Motor Carrier Safety Act and are therefore not exempt from the overtime requirements pursuant to M.G.L. ch.151, § 1A.

69. Plaintiffs and class members who during the class period have operated vehicles with a gross vehicle weight rating of less than 10,001 pounds are, therefore, legally entitled to overtime compensation for all hours worked in excess of forty per work week under the Massachusetts overtime law.

70. Plaintiffs and plaintiff class members who operate vehicles with a gross vehicle weight rating of less than 10,001 pounds have not been paid at the rate of time and one-half their regular rate of pay for all hours of overtime worked, in violation of M.G.L. ch.151, § 1A. This claim is brought under M.G.L. ch.151, § 1B.

## COUNT IX
### (Injunctive Relief)

71. As Defendant has at all times continued to misclassify Plaintiffs and Class Members as independent contractors despite retaining control over them as employees, the Plaintiffs and Class Members seek permanent injunctive relief enjoining Defendant from practicing the unlawful practices alleged herein.

## JURY DEMAND

Plaintiffs request a trial by jury on their claims.

WHEREFORE, Plaintiffs request that this Court enter the following relief:

1. Certification of this case as a class action pursuant to Fed. R. Civ. P. 23;

2. A declaratory judgment that Plaintiffs and other similarly situated persons are employees, not independent contractors;

3. Disgorgement of profits unjustly retained by Defendant as a result of their unlawful practice of misclassifying Plaintiffs and other similarly situated persons as independent contractors;

4. All damages to which Plaintiffs and Class Members may be entitled, including trebling of wage-related damages;

5. Rescission of the Operating Agreement and awarding restitution compensating for the reasonable value of the benefit provided to Defendant;

6. Any other relief to which Plaintiffs and Class Members may be entitled.

August 17, 2010

Respectfully Submitted,

_/s/ Shannon Liss-Riordan_
Shannon Liss-Riordan, BBO #640716
Harold L. Lichten, BBO #549689
Ian O. Russell, BBO #673387
LICHTEN & LISS-RIORDAN, P.C.
100 Cambridge St., 20th Floor
Boston, MA 02114
(617) 994-5801